No. 19,138.

THE BUCK STOVE & RANGE COMPANY et al., *Appellees,*
v. C. C. VICKERS et al., *Appellants.*

SYLLABUS BY THE COURT.

FRAUDULENT CONVEYANCE—*Hindering and Delaying Creditors.*
A debtor in failing circumstances and being pressed by
numerous creditors conveyed all his real estate, including his
homestead, to his wife's father for a consideration consid-
erably less than its value. A part of the consideration was
$1000 in cash, which was at once applied to satisfy the debtor's
indebtedness to a bank of which he was president. Another
part of the consideration was the assumption of a mortgage
on the land. The remainder of the consideration was repre-
sented by two promissory notes of the grantee due in six and
twelve months respectively. The debtor was without other
resources. *Held,* the transaction disclosed an intent to hinder
and delay creditors and had that effect within the purview of
the statute of frauds and perjuries. (Gen. Stat. 1909, § 3834.)

Appeal from Saline district court; DALLAS GROVER,
judge. Opinion filed January 9, 1915. Affirmed.

*S. H. Allen,* and *Otis S. Allen,* both of Topeka, for
the appellants.

*M. B. Nicholson,* and *W. J. Pirtle,* both of Council
Grove, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action in the district court was
commenced by creditors to set aside a deed of real
estate made by their debtor while in a failing condi-
tion. The plaintiffs recovered, and the defendants
appeal.

In 1891 C. C. Vickers, a resident of Morris county,
became a member of a firm engaged in the hardware
and implement business at Wichita Falls, Tex. In
1894 the firm became financially embarrassed, and
proved to be insolvent. In July, 1894, while being
pressed by firm creditors and by the bank of Dunlap,

of which Vickers was president and to which he was indebted, he conveyed all the real estate he owned to his wife's father, P. B. Maxson. His wife joined in the deed. The real estate conveyed was worth $9500. It consisted of a ranch of about eight hundred and forty acres in Morris county, part of which was a homestead, and some town lots in Dunlap. The ranch was mortgaged for $3000. The consideration for the conveyance was $1000 in cash, two promissory notes of $2250 each, payable in six and twelve months, and the assumption of the mortgage on the ranch. At the time of the conveyance Vickers had little or no personal property with which to pay debts. The cash portion of the consideration was applied immediately to satisfy the claim of the Dunlap bank. The court made, among others, the following findings of fact:

"21.   When C. C. Vickers signed the deeds he realized that he was in failing circumstances and that if his creditors pressed their claims against him it would mean financial failure; and while it was not his purpose to defraud any of his creditors, it was his purpose to place his property beyond the reach of his creditors, and to hinder and delay them in the collection of their claims against him until he could arrange for the payment of all claims against him.

"22.   At the time of the execution of the deeds by C. C. Vickers and his wife, Mary P. Vickers, and the delivery of the deeds to P. B. Maxson, said Maxson knew, or was in possession   of sufficient information to lead an ordinarily prudent person to believe, that it was the purpose of C. C. Vickers in disposing of all his real estate to put his property beyond the reach of his creditors, in order that he might hinder and delay them in the collection of their claims against him."

Judgment was rendered setting aside the deed to Maxson and ordering the land attempted to be conveyed, except the homestead, to be sold to satisfy the judgments of the plaintiffs.

The defendants insist that the findings quoted are not sustained, but the court regards them as well sus-

tained by the facts embraced in other findings. The defendants further insist that the sale to Maxson placed the creditors of Vickers in a better position than that which they occupied before, and consequently that it could not be fraudulent as to them.

The statute reads as follows:

"Every gift, grant or conveyance of lands, tenements, hereditaments, rents, goods or chattels, and every bond, judgment or execution, made or obtained with intent to hinder, delay or defraud creditors of their just and lawful debts or damages, or to defraud or to deceive the person or persons who shall purchase such lands, tenements, hereditaments, rents, goods or chattels, shall be deemed utterly void and of no effect." (Gen. Stat. 1909, § 3834.)

It will be observed that the statute is in the disjunctive—"hinder, delay or defraud." A specific meaning is attached to each of the words, and it is sufficient to avoid a conveyance to show that any intent which the statute condemns prompted the transfer.

Vickers is not permitted to say that the sale of the real estate for less than its value was a good thing for his creditors, or that his creditors were not hindered and delayed by taking away from them land subject to execution immediately upon the rendition of judgment, and substituting for it personal notes of a stranger, due in the future.

In Bigelow on Fraudulent Conveyances it is said:

"The grantor may honestly intend to pay all his debts, and honestly believe that the particular course taken by him will work best to that end; but he is not to be judge in respect of the creditor's interests." (Revised ed., p. 116.)

In Bump on Fraudulent Conveyances it is said:

"The time for the performance of a contract is both in morals and in law an essential part of the contract itself, and a debtor who attempts to postpone the time of payment, endeavors to deprive his creditors of a valuable right, and thus it may justly be said that a positive intent to defraud always exists where the in-

ducement to a conveyance is to hinder and delay creditors, since the right of creditors to receive their demands when due is as absolute as their right to receive them at all.    Therefore, where the debtor places his property beyond the reach of legal process so as to delay creditors, this is a legal fraud, although he may intend ultimately to appropriate it for the benefit of all, or a part of them.    The law provides a mode for the appropriation of a debtor's property to the payment of his debts, and the interposition of any obstacle to prevent such appropriation in the due course of legal proceedings is a delay and hindrance within the meaning of the statute."    (4th ed., p. 18.)

Other matters presented in the brief of the defendants do not require discussion, and the judgment of the district court is affirmed.